IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Tamika Jackson,<br><br>  Plaintiff,<br><br>v.<br><br>Toyota Industrial Equipment Manufacturing, Inc.; Toyota Material Handling, Inc. d/b/a Toyota Forklifts of Augusta; and Toyota Material Handling North America, Inc.,<br><br>  Defendants. | C/A no.  1:23-cv-06437-CMC<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff alleges:

## PARTIES AND JURISDICTION

1. Plaintiff Tamika Jackson is a citizen and resident of Aiken County, South Carolina.

2. Defendant Toyota Industrial Equipment Mfg., Inc., ("TIEM") is a corporation incorporated under the laws of the State of Indiana, with its principal place of business in the State of Indiana.

3. Upon information and belief, in or around 2020, Defendant TIEM was merged with Toyota Material Handling U.S.A., Inc. to form Toyota Material Handling, Inc.

4. Defendant Toyota Material Handling, Inc., ("TMH") is a corporation incorporated under the laws of the State of California, with its principal place of business in the State of Indiana.

5. Defendant TMH also does business in the state of South Carolina as Toyota Forklifts of Augusta.

6. Upon information and belief, that at all times herein mentioned, Defendant TMH is the successor in interest of Defendant TIEM.

1

7. Defendant TIEM designed and manufactured the subject forklift in this action, Model# 8BNCU20, Serial# 8BNCU20-58957.

8. Defendant TMH designed and manufactured the subject forklift in this action, Model# 8BNCU20, Serial# 8BNCU20-58957.

9. Defendant TMH is authorized to do business in the State of South Carolina and can be served with process via its registered agent Business Filings Incorporated at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

10. Upon information and belief, that at all times herein mentioned, Defendant Toyota Material Handling Inc. ("TIEM") is the successor of Toyota Industrial Equipment Manufacturing, Inc. ("TIEM").

11. Defendant Toyota Material Handling North America, Inc., ("TMHNA") is the parent company of Defendant TMH as well as the The Raymond Corporation, another forklift manufacturer.

12. For purposes of the allegations below, plaintiff will collectively refer to the defendants as the Toyota defendants.

13. The Toyota defendants are engaged in the business of designing, manufacturing, testing, marketing, promoting, distributing, and/or selling forklifts and other products, or otherwise placing forklifts and other products into the stream of commerce, including the forklift that is the subject of this action.

14. The Toyota defendants are subject to the personal jurisdiction of this Court by virtue of the following:

a.      The Toyota defendants have minimum contacts with South Carolina by virtue of their marketing, distributing, and selling products, including forklifts such as the subject product, within the state of South Carolina;

b.      Defendant TMH, a subsidiary of TMHNA, is registered, authorized, and holds a certificate to conduct business in the state of South Carolina and does conduct business here;

c.      The Toyota defendants have purposefully availed themselves of the privilege of conducting business activities within the state of South Carolina by placing products, including the subject forklift at issue in this matter, into the stream of commerce and by marketing their products and selling their products within the state of South Carolina.

d.      The Toyota defendants do reasonably expect, or should reasonably expect, that their business activities could or would have consequences within the state of South Carolina thereby subjecting it to this Court's jurisdiction.

e.      The Toyota defendants engage in the following conduct in the state of South Carolina:

  i.    Transacting business;
  ii.   Contracting to supply services and things;
  iii.  As alleged below, committing a tortious act in whole or in part in South Carolina;
  iv.   As alleged below, causing tortious injury in South Carolina by acts / omissions outside South Carolina under circumstances where they

      do business here and derive substantial revenue from goods and services sold and rendered in South Carolina; and

   v.  This action specifically arises out of and relates to the aforementioned conduct of the Toyota defendants as this action arises out of the design, manufacture, and sale of the subject forklift which was sold to The Carlstar Group, plaintiff's employer, in Aiken, South Carolina.

  f.  The Toyota defendants, through the above-mentioned conduct, have established continuous and systematic contacts with the state of South Carolina sufficient for the exercise of personal jurisdiction over it by this Court, the exercise of which will not offend traditional notions of fair play and substantial justice, and which is consistent with the constitutional requirements of due process.

  g.  Because Defendant TMH has maintained authorization to conduct business in South Carolina since 2001 and maintains a registered agent for service of process in South Carolina, this Court may exercise personal jurisdiction over it based upon that enduring relationship. *See* S.C. Code § 36-2-802.

15.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Defendant is a citizen of a different state than plaintiff and there exists complete diversity among the parties.

16.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.  Venue is proper in this District because a substantial part of the events giving rise to this action occurred in this District.

**FACTUAL ALLEGATIONS**

18. On January 12, 2021, Plaintiff was severely injured when she was thrown out of the operator compartment of the subject forklift, and the subject forklift rolled over her left foot and ankle.

19. Plaintiff's injuries ultimately required the amputation of her left foot and ankle.

20. Plaintiff is an experienced forklift operator and has been employed by The Carlstar Group for over 25 years.

21. On January 12, 2021, Plaintiff was performing her normal and ordinary duties as a forklift operator at The Carlstar Group.

22. Just prior to the crash, Plaintiff was operating the subject forklift in a reasonable and foreseeable manner when she attempted to stop the lift by releasing her foot from the Deadman Pedal.

23. When she applied the brake in this manner, the subject forklift jerked suddenly and threw Plaintiff out of the operator's compartment as there was nothing on the cab of the lift to keep Plaintiff in the operator's compartment.

24. After Plaintiff was thrown out of the subject forklift, the lift continued rolling onto a scale and then rolled on top of Plaintiff's left foot and ankle.

25. During this event, Plaintiff attempted to remain within the forklift's operator compartment, but could not, and as a result her foot was run over by the forklift and crushed.

26. The forklift did not have a rear operator compartment safety door or similar device as standard equipment when designed, manufactured or sold by the Toyota defendants.

27. The Toyota defendants manufacture a Rear Door Assembly that was an optional feature on this type of forklift.

28. There are other feasible, alternative designs for rear doors, guards, or similar devices that would have protected Plaintiff from being injured by keeping her in the operator's compartment that were known and available to the Toyota defendants at the time the subject forklift was sold.

29. In making its purchasing decisions relating to the subject forklift, the forklift's owner reasonably relied upon the representations made by the Toyota defendants relating to the safety of the forklift.

30. As a result of its reasonable reliance on the representations made by the Toyota defendants relating to the safety of the subject forklift, the forklift was purchased without the Rear Door Assembly.

31. A rear door can assist an operator in being aware of the confines of the operator compartment on the forklift.

32. Being aware of the confines of the operator compartment on the forklift can assist an operator in remaining safely in the confines of the operator compartment in crash events with fixed objects.

33. A rear door can protect an operator from lower leg injury in the event of a crash event.

34. A rear door of a variety of designs, including but not limited to interlocking, spring loaded, latched, and magnetically controlled, would have protected Plaintiff from injury during the crash event.

35. In addition, there are additional defects in the design and manufacture of the subject forklift that will be revealed by discovery and inspection.

36. In addition, the subject forklift did not perform as intended and designed during the subject crash due to failures in the maintenance and service of the subject forklift performed by Defendant TMH d/b/a Toyota Forklifts of Augusta.

37. As a result of these defects and negligent acts, Plaintiff was involved in a crash of the forklift, during which she was not maintained in, and thrown from, the occupant space of the subject forklift, causing her serious injury.

38. As a direct and proximate result of the crash, Plaintiff sustained severe and permanent injuries, including, but not limited to, crush injuries to her foot that resulted in the amputation of her left ankle and foot.

39. Plaintiff has incurred general damages including past, present and future mental and physical pain and suffering as a result of these injuries.

## CAUSES OF ACTION

**First: Strict liability**

40. Plaintiff incorporates all prior paragraphs.

41. At all times, the Toyota defendants were a "seller" of the subject forklift as that term is defined by S.C. Code § 15-73-10 *et seq*.

42. At the time of the sale of the subject forklift, the subject forklift was defective in its design and manufacture rendering it unreasonably dangerous for its intended and foreseeable uses.

43. At no time prior to the subject incident was the forklift altered or modified in any way.

44. At the time of the subject incident, the subject forklift was without substantial change in the condition in which it was sold outside normal and expected wear from its foreseeable use.

45.     At the time of the crash, the subject forklift was defective in that it failed to prevent Plaintiff from being thrown from the operator's compartment and allowing her to move outside the forklift's occupant space.

46.     At the time of the subject forklift's design and manufacture, safer alternative designs were existing and available that would have reduced the risk of ejection from the operator's compartment including, but not limited to, the Rear Door Assembly that the defendants offered as optional safety equipment with the subject forklift.

47.     While not exhaustive of the feasible, alternative designs available to Defendant, the following alternative designs could have eliminated the risk of harm associated with the subject forklift's design including a rear door, guard, harness or other similar device to prevent the operator from being thrown from the occupant space of the forklift in a foreseeable collision.

48.     None of the above-described designs would negatively affect the utility, functionality, or operation of the entire forklift as evidenced by the defendants' own Rear Door Assembly design.

49.     The defective design of the subject forklift without a door, guard, harness, or similar device on the rear of the forklift rendered it unreasonably dangerous for the foreseeable use for which it was sold and was the direct and proximate cause of Plaintiff's injuries.

50.     The subject forklift may also be defective in its manufacture and design as will be revealed in discovery and joint inspection of the forklift occurs.

51.     As a direct and proximate result of these defects in the subject forklift, Plaintiff suffered injuries and damages, including medical expenses, lost income and benefits, and mental and physical pain and suffering and disfigurement. These injuries are permanent, and in the future,

Plaintiff will suffer medical and other necessary expenses, loss of earning capacity and earnings, loss of capacity to labor, and mental and physical pain and suffering.

**Second:** **Negligence / Gross Negligence**

52. Plaintiff incorporates all prior paragraphs.

53. At all relevant times, the Toyota defendants were responsible for the design, testing, inspection, part selection, assembly, equipping, marketing, distribution, and sale of the subject forklift.

54. At all relevant times, the Toyota defendants had a duty to the foreseeable users of the subject forklift to design and manufacture it free from any defect that renders it unreasonably dangerous during its foreseeable use.

55. The Toyota defendants failed to do so and were negligent, grossly negligent, willful, wanton, reckless, and / or careless in the design, testing, inspection, part selection, assembly, manufacture, equipping, marketing, distribution, and sale of the subject truck and breached the duties owed Plaintiff by the following acts:

   a. Failure to design, manufacture, and test the subject forklift in a manner so that the occupant is maintained in the operator's compartment during a foreseeable stoppage of the forklift;

   b. Failing to design, manufacture, service, or maintain subject forklift's emergency braking system to keep it from violently stopping, increasing the likelihood that operators are thrown from the operator compartment;

   c. Failure to include their own Rear Door Assembly as standard equipment;

   d. Failure to adequately study and assess the human factors associated with the design of the subject forklift along with the actual and relative risk of injury

resulting from occupants being thrown from standup forklifts versus some other less likely rear world crash scenario;

e. Failure to adopt feasible alternative designs to keep the operator within the operator compartment during foreseeable collisions involving the subject forklift; and

f. Any other negligent, grossly negligent, reckless, willful, wanton, or careless act revealed during the course of discovery.

56. As a direct and proximate result of these acts, Plaintiff suffered serious and painful injuries and disfigurement for which she is entitled to recover.

**Third:** **Breach of implied warranty**

57. Plaintiff incorporates all prior paragraphs.

58. The Toyota defendants impliedly warranted to the purchaser and foreseeable users of the subject forklift that the subject forklift was merchantable, was fit for the ordinary purpose for which such goods are sold and used and was fit for the particular use for which it was purchased.

59. The purchaser and foreseeable users of the subject forklift made ordinary use of the subject forklift and, contrary to the implied warranties given, the subject forklift was defective, unreasonably dangerous, and unfit for its ordinary and foreseeable use as set forth fully above.

60. As such, the Toyota defendants breached the implied warranties given with the subject truck and, as a direct and proximate result, Plaintiff suffered serious injury and disfigurement for which she is entitled to recover.

## JURY DEMAND

61. Plaintiff demands a trial by jury on all claims so triable.

## **REQUEST FOR RELIEF**

62. Plaintiff incorporates all prior paragraphs.

63. Plaintiff asks for judgment against the Toyota defendants as follows:

    a. actual damages including incurred medical costs, loss of past and future earnings, funeral expenses, and any other pecuniary loss to Plaintiff proven at trial and permitted by law,

    b. compensatory damages including conscious physical pain and suffering and disfigurement,

    c. for all recoverable costs of court;

    d. for punitive damages as determined by the trier of fact should discovery reveal a defendant has engaged in conduct recklessly, willfully, wantonly, or with conscious disregard of plaintiff's decedent's rights; and

    e. for such other relief as the trier of fact deems just and proper.

Respectfully Submitted,

**RICHARDSON THOMAS, LLC**

By:     *s/Chris Moore*
        Chris Moore (FBN:10445)
        383 W. Cheves Street
        Florence SC 29501
        T: 803.281.8150
        chris@richardsonthomas.com

        Amy L.B. Hill (FBN: 7696)
        amy@richardsonthomas.com
        Grace M. Babcock (FBN: 13880)
        grace@richardsonthomas.com
        1513 Hampton Street, First Floor
        Columbia, SC 29201
        T: (803) 281-8145
        F: (803) 632-8263

and

**PRACHT INJURY LAWYERS LLP**
J. Christopher Pracht, V
304 N. Church Street
Greenville, SC 29601
chris@864law.com

*Attorneys For Plaintiff*

December 11, 2023